## UNITED STATES DISTRICT COURT

14 CV 5283

### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN STEVENS, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>vs.<br><br>PLY GEM HOLDINGS, INC., GARY E. ROBINETTE, SHAWN K. POE, FREDERICK J. ISEMAN, ROBERT A. FERRIS, STEVEN M. LEFKOWITZ, JOHN D. ROACH, MICHAEL P. HALEY, TIMOTHY T. HALL, JEFFREY T. BARBER, J.P. MORGAN SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN, SACHS & CO., UBS SECURITIES LLC, DEUTSCHE BANK SECURITIES INC., ZELMAN PARTNERS LLC, BB&T CAPITAL MARKETS, and STEPHENS INC.,<br><br>        Defendants. | CIVIL ACTION NO.<br><br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, John Stevens ("Plaintiff"), alleges the following based upon the investigation of Plaintiff's counsel, which included, among other things, a review of defendants' public documents, conference calls and announcements, United States Securities and Exchange Commission ("SEC") filings and press releases published by Ply Gem Holdings, Inc. ("Ply Gem" or the "Company"). Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal class action on behalf of purchasers of the common stock of Ply Gem, who purchased or otherwise acquired Ply Gem common stock pursuant or traceable to the

Company's Initial Public Offering (the "IPO" or the "Offering"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2.      Ply Gem is a self-described "leading manufacturer of exterior building products" in North America.  The Company manufactures a variety of products utilized in residential and commercial construction, including siding, fencing, stone, windows, and doors.  The Company reports that it has a "multi-channel distribution network that serves both the new construction and the home repair and remodeling sectors," including the distribution of its products to specialty distributors (who sell the Company's products to remodeling contractors and builders) and wholesale distributors (who sell the Company's products to retail home centers and lumberyards who, in turn, sell to remodeling contractors, builders, and consumers).

3.      On or about May 23, 2013, the Company conducted its IPO.  The IPO was a financial success for the Company and its underwriters, as they raised $381 million by selling over 18 million shares of the Company's common stock to investors at a price of $21.00 per share.  In connection with the IPO, the Company filed a Registration Statement, numerous Amendments to the Registration Statement and a Prospectus (collectively referred to herein as the "IPO Materials") with the SEC.

4.      However, as Ply Gem's shareholders would slowly discover, the IPO Materials were negligently prepared and failed to discuss a number of known material trends and events that were likely to have a material adverse effect on Ply Gem's financial results and condition.  As detailed herein, the IPO Materials negligently failed to disclose that Ply Gem had entered into a supply contract with The Home Depot, Inc. ("Home Depot") that required the Company to (i) buy back inventory from Home Depot and (ii) sell a large volume of low-priced/low-margin product to Home Depot.  The IPO Materials also negligently failed to disclose that Ply Gem was

experiencing ongoing labor inefficiencies and other costs associated with, among other things, the production of the low-priced/low-margin products for Home Depot.

5.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members suffered damages.

## JURISDICTION AND VENUE

6.     The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

7.     This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act (15 U.S.C. § 77v).

8.     Venue is proper in this District pursuant to Section 22 of the Securities Act.  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.

9.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

10.     Plaintiff as set forth in the accompanying certification, incorporated by reference herein, purchased Ply Gem common stock traceable to the IPO and has been damaged thereby.

11.     Defendant Ply Gem is a Delaware corporation with its principal executive offices located at 5020 Weston Parkway, Suite 400, Cary, North Carolina.

12.     Defendant Gary E. Robinette ("Robinette") was, at all relevant times, the

3

Company's President, Chief Executive Officer, and Vice Chairman of the Company's Board of Directors. Robinette signed Ply Gem's Form S-1 Registration Statement.

13.    Defendant Shawn K. Poe ("Poe") was, at all relevant times, the Company's Vice President, Chief Financial Officer, Treasurer and Secretary. Poe signed Ply Gem's Form S-1 Registration Statement.

14.    Defendant Frederick J. Iseman ("Iseman") was, at all relevant times, the Chairman of the Company's Board of Directors. Iseman signed Ply Gem's Form S-1 Registration Statement.

15.    Defendant Robert A. Ferris ("Ferris") was, at all relevant times, a member of the Company's Board of Directors. Ferris signed Ply Gem's Form S-1 Registration Statement.

16.    Defendant Steven M. Lefkowitz ("Lefkowitz") was, at all relevant times, a member of the Company's Board of Directors. Lefkowitz signed Ply Gem's Form S-1 Registration Statement.

17.    Defendant John D. Roach ("Roach") was, at all relevant times, a member of the Company's Board of Directors. Roach signed Ply Gem's Form S-1 Registration Statement.

18.    Defendant Michael P. Haley ("Haley") was, at all relevant times, a member of the Company's Board of Directors. Haley signed Ply Gem's Form S-1 Registration Statement.

19.    Defendant Timothy T. Hall ("Hall") was, at all relevant times, a member of the Company's Board of Directors. Hall signed Ply Gem's Form S-1 Registration Statement.

20.    Defendant Jeffrey T. Barber ("Barber") was, at all relevant times, a member of the Company's Board of Directors. Barber signed Ply Gem's Form S-1 Registration Statement.

21.    Defendants Robinette, Poe, Iseman, Ferris, Lefkowitz, Roach, Haley, Hall, and Barber are collectively referred to hereinafter as the "Individual Defendants."

22.    Defendant J.P. Morgan Securities LLC ("JP Morgan") was an underwriter of the

4

Company's IPO. According to the Financial Industry Regulatory Authority, Inc. ("FINRA"), JP Morgan is located at 383 Madison Avenue, New York, New York.

23.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") was an underwriter of the Company's IPO. According to FINRA, Credit Suisse is located at 11 Madison Avenue, 24th Floor, New York, New York.

24.     Defendant Goldman, Sachs & Co. ("Goldman Sachs") was an underwriter of the Company's IPO. According to FINRA, Defendant Goldman Sachs is located at 200 West Street, New York, New York.

25.     Defendant UBS Securities LLC ("UBS") was an underwriter of the Company's IPO. According to FINRA, UBS is located at 1285 Avenue of the Americas, New York, New York.

26.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") was an underwriter of the Company's IPO. According to FINRA, Deutsche Bank is located at 60 Wall Street, New York, New York.

27.     Defendant Zelman Partners LLC ("Zelman") was an underwriter of the Company's IPO. Defendant Zelman is headquartered in Ohio and maintains an office at 330 Madison Avenue, 20th Floor, New York, New York.

28.     Defendant BB&T Capital Markets ("BB&T") was an underwriter of the Company's IPO. Defendant BB&T is headquartered in Virginia and maintains an office at 1133 Avenue of the Americas, 27th Floor, New York, New York.

29.     Defendant Stephens Inc. ("Stephens") was an underwriter of the Company's IPO. Defendant Stephens is headquartered in Arkansas and maintains an office at 65 East 55th Street, 22nd Floor, New York, New York.

30.     Defendants JP Morgan, Credit Suisse, Goldman Sachs, UBS, Deutsche Bank, Zelman, BB&T, and Stephens are collectively referred to hereinafter as the "Underwriter Defendants."   The Underwriter Defendants served as financial advisors, and assisted in the preparation and dissemination of the IPO Materials for Ply Gem's public stock offering.

## SUBSTANTIVE ALLEGATIONS

### Background

31.     Ply Gem is a self-described "leading manufacturer of exterior building products" in North America.   The Company manufactures a variety of products utilized in residential and commercial construction, including siding, fencing, stone, windows, and doors.   The Company reports that it has a "multi-channel distribution network that serves both the new construction and the home repair and remodeling sectors," including the distribution of its products to specialty distributors (who sell the Company's products to remodeling contractors and builders) and wholesale distributors (who sell the Company's products to retail home centers and lumberyards who, in turn, sell to remodeling contractors, builders, and consumers).

32.     On or about May 23, 2013, the Company conducted its IPO.   In connection with the IPO, the Company filed a Registration Statement, numerous Amendments to the Registration Statement and a Prospectus with the SEC.   The IPO was a financial success for the Company (the "Registrant" of the Offering) and its underwriters, as they raised $381 million by selling over 18 million shares of stock to investors at a price of $21.00 per share.

33.     The SEC has published general instructions for companies who seek to use a Form S-1 Registration Statement.[1]   The general instructions state that certain specific information with respect to the Registrant, including "[i]nformation required by Item 303 of Regulation S-K ([§

---

[1]     See http://www.sec.gov/about/forms/forms-1.pdf.

229.303]), management's discussion and analysis of financial condition and results of operations," is required to be included in the IPO Materials.

34.    17 C.F.R. § 229.303 (Item 303) is entitled Management's Discussion and Analysis of Financial Condition and Results of Operations.  Item 303(a) requires that the Registrant fully discuss its "financial condition, changes in financial condition and results of operations."  Item 303(a) also states that the discussion "shall provide such other information that the registrant believes to be necessary to an understanding of its financial condition, changes in financial condition and results of operations."

35.    With respect to the Registrant's discussion of its liquidity, Item 303(a)(1) requires that the Registrant:

> Identify any known trends or any known demands, commitments, events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any material way.  If a material deficiency is identified, indicate the course of action that the registrant has taken or proposes to take to remedy the deficiency.  Also identify and separately describe internal and external sources of liquidity, and briefly discuss any material unused sources of liquid assets.

36.    Additionally, with respect to the Registrant's discussion of its results of operations, Item 303(a)(3) requires the Registrant to:

> (i) Describe any unusual or infrequent events or transactions or any significant economic changes that materially affected the amount of reported income from continuing operations and, in each case, indicate the extent to which income was so affected. ...

> (ii) Describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations.  If the registrant knows of events that will cause a material change in the relationship between costs and revenues (such as known future increases in costs of labor or materials or price increases or inventory adjustments), the change in the relationship shall be disclosed.

> (iii) To the extent that the financial statements disclose material increases in net sales or revenues, provide a narrative discussion of the extent to which such

increases are attributable to increases in prices or to increases in the volume or amount of goods or services being sold or to the introduction of new products or services.

(iv) For the three most recent fiscal years of the registrant or for those fiscal years in which the registrant has been engaged in business, whichever period is shortest, discuss the impact of inflation and changing prices on the registrant's net sales and revenues and on income from continuing operations.

37.   The instructions to Item 303(a) expand upon the above requirements and explain that:

1.   The registrant's discussion and analysis shall be of the financial statements and other statistical data that the registrant believes will enhance a reader's understanding of its financial condition, changes in financial condition and results of operations. ...

2.   The purpose of the discussion and analysis shall be to provide to investors and other users information relevant to an assessment of the financial condition and results of operations of the registrant as determined by evaluating the amounts and certainty of cash flows from operations and from outside sources.

3.   The discussion and analysis shall focus specifically on material events and uncertainties known to management that would cause reported financial information not to be necessarily indicative of future operating results or of future financial condition.  This would include descriptions and amounts of (A) matters that would have an impact on future operations and have not had an impact in the past, and (B) matters that have had an impact on reported operations and are not expected to have an impact upon future operations.

38.   The IPO Materials for Ply Gem's IPO were negligently prepared and failed to discuss a number of known material events that were likely to have a material adverse effect on Ply Gem's financial results and condition.  For example, the IPO Materials negligently failed to disclose that Ply Gem had entered into a supply contract with Home Depot that required the Company to (i) buy back inventory from Home Depot and (ii) sell a large volume of low-priced/low-margin product to Home Depot.  The IPO Materials also negligently failed to disclose that Ply Gem was experiencing ongoing labor inefficiencies and other costs associated with, among other things, the production of the low-priced/low-margin products for Home Depot.

39.     This information would be slowly revealed to Ply Gem's shareholders following the completion of Ply Gem's IPO.

40.     For example, on August 13, 2013, Ply Gem reported its second quarter 2013 financial and operational results. For the quarter, the Company reported net sales of $368.1 million and adjusted EBITDA of $41.1 million. The Company also stated the following:

> Excluding $23.5 million of one-time initial public offering costs incurred during the second quarter, our 2013 second quarter operating earnings decreased $6.7 million to $24.2 million compared to operating earnings of $30.9 million for 2012, reflecting more adverse weather conditions experienced in 2013 relative to 2012, labor inefficiencies, and operating ramp-up costs related to significant unit volume increases in our U.S. Window business.

> *          *          *

> "Ply Gem's sales continue to benefit from the recovery in new construction markets; however, demand for big ticket repair and remodeling items has been sluggish and further compressed by unfavorable weather conditions during the first quarter that drove higher inventory levels within distribution channels, which resulted in lower demand for our products during April and May." said Gary E. Robinette, Ply Gem's President and CEO.

> Mr. Robinette went on to say "The expected recovery in the U.S. housing market represents significant growth opportunity for Ply Gem, however it also brings near-term challenges primarily in the form of labor resource requirements to meet increasing market demand. Recognizing this challenge, earlier this year we launched our enterprise lean initiative that when completed will provide greater manufacturing flexibility."

41.     Also on August 13, 2013, Ply Gem held an earnings conference call with investors and financial analysts. During this call, defendants Robinette and Poe discussed, among other things, how "labor resource requirements," "abnormal inefficiencies," and a "lower-end mix of product sold" to Home Depot had negatively impacted the Company's financial results for the second quarter of 2013.

42.     Following the release of Ply Gem's second quarter financial and operational results, shares of the Company's stock declined $3.66 per share, or 19.3 percent, to close on August 13,

2013 at $15.26 per share, on heavy trading volume.

43.     On November 5, 2013, Ply Gem reported its third quarter 2013 financial and operational results.  For the quarter, the Company reported net sales of $407.4 million, operating earnings of $36.2 million, and adjusted EBITDA of $48.3 million.  The press release announcing the quarterly results also contained the following statement from defendant Robinette:

> Ply Gem continued to execute during the third quarter as the new construction market drove further demand for our products while channel inventory levels improved.  We experienced strong revenue growth led by our Windows and Doors segment.  As a result, we are continuing to add labor resources to scale our operations in order to satisfy customer demand.  Importantly, as we complete the implementation of our enterprise lean initiatives, we anticipate experiencing productivity improvements.

44.     On November 6, 2013, Ply Gem held an earnings conference call with investors and financial analysts.  During this call, defendants Robinette and Poe discussed, among other things, how product pricing, expenses related to an "inventory buyback" from Home Depot, labor "ramp up costs" from scaling up the Company's workforce to meet demand, and a high employee turnover rate had negatively impacted the Company's financial results for the third quarter of 2013.

45.     On January 10, 2014, after the close of the market, the Company issued a press release entitled "Ply Gem Holdings, Inc. Provides Fourth Quarter 2013 Update."  Citing a "continued lag in demand for … higher profit margin 'big ticket' repair and remodeling products," the Company announced that it expected to report fourth quarter net sales of $330.0 to $335.0 million and adjusted EBITDA of $15.0 to $17.0 million.  Ply Gem also disclosed additional details about the Company's labor inefficiencies, as follows:

> Gross margin – Our estimated fourth quarter 2013 gross margin performance was impacted by lower than expected sales which results in lower operating leverage against fixed manufacturing costs.  In addition, our gross margins within our windows and doors segment continue to be impacted by labor inefficiencies driven by the uneven recovery and an unfavorable shift in product mix towards our lower priced products which typically carry a lower profit margin. Ply Gem is proactively addressing the labor inefficiencies and ramp-up costs that result from demand

volatility through our "Enterprise Lean" initiative and a significantly enhanced sales and operating planning process which we expect to implement in early 2014. With these measures and with the expectation for a more normal market recovery, we believe that the challenges that we saw in 2013 will be mitigated as we go forward.

46.     Following the release of Ply Gem's fourth quarter and full year 2013 financial and operational results, shares of the Company's stock declined an additional $2.92 per share, or over 17 percent, to close on January 13, 2014 at $14.07 per share, on heavy trading volume.

47.     Finally, on March 14, 2014, Ply Gem reported its fourth quarter and full year 2013 financial and operational results.  For the quarter, the Company reported net sales of $332.9 million, adjusted operating earnings of $3.2 million, and adjusted EBITDA of $16.0 million.  For the year, Ply Gem reported total net sales of $1.365.6 billion, adjusted operating earnings of $63.1 million (compared to $71.7 million for 2012), and adjusted EBITDA of $117.5 million (compared to $127.3 million for 2012).  With respect to the Company's fourth quarter financial results, the Company disclosed:

> Gross profit margin was 17.5%, which represented a contraction of 380 basis points from the fourth quarter of 2012.  The decrease in gross profit margin was largely due to segment and product mix in which we experienced outsized growth of our Windows and Doors segment which has greater exposure to the recovering U.S. new construction market and currently has lower profit margins.  In addition, during the last 5 weeks of the quarter, the unusually harsh winter weather in the upper Midwest, Northeast and Eastern seaboard regions in the U.S. adversely impacted demand for exterior building products and delayed new home construction.  As a result of this unexpected drop in demand, we experienced a number of operating inefficiencies, predominately labor inefficiencies, at our manufacturing facilities in both our operating segments.

48.     On this news, shares of the Company's stock fell an additional $0.44 per share, or nearly 4 percent, to close on March 14, 2014 at $11.55 per share, on heavy trading volume.

49.     At the time this Complaint was filed, the Company's shares were trading at approximately $9.90 per share -- a cumulative loss over 50 percent of the value of the Company's shares at the time of its IPO in May 2013.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class, consisting of all those who purchased or otherwise acquired Ply Gem's common stock pursuant or traceable to the Company's May 23, 2013 IPO, and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

51.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. In connection with the IPO, the Company sold over 18 million shares of common stock to investors. These shares are owned by thousands of persons.

52.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

      (a)     Whether the Securities Act was violated by defendants;

      (b)     Whether defendants omitted and/or misrepresented material facts;

      (c)     Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

      (d)     Whether defendants negligently disregarded that their statements were false and misleading;

      (e)     Whether the price of Ply Gem stock was artificially inflated; and

(f)    The extent of damage sustained by Class members and the appropriate measure of damages.

53.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

54.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

55.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FIRST CLAIM**
**Violation of Section 11 of**
**The Securities Act Against All Defendants**

56.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter, or the intent of the defendants to defraud Plaintiff or members of the Class.

57.    This count is brought pursuant to Section 11 of the Securities Act on behalf of the Class, against all defendants.

58.    As set forth above, the Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

59.    Ply Gem is the issuer of common stock in the IPO.  As issuer of the common stock, Ply Gem is strictly liable to Plaintiff and to the members of the Class who purchased pursuant or traceable to the Registration Statement for the materially untrue statements and omissions alleged herein.

60.     The Individual Defendants were directors at the time of the IPO and/or signed the Registration Statement or authorized it to be signed on their behalf.

61.     The Underwriter Defendants served as underwriters for Ply Gem's IPO.

62.     The Individual Defendants and the Underwriter Defendants owed to the purchasers of Ply Gem's common stock pursuant or traceable to the IPO the duty to make a reasonable investigation of the statements contained in the Registration Statement to ensure that such statements were accurate and that they did not contain any misstatement or omission of material fact, and, in the exercise of reasonable care, should have known that the Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

63.     This claim is brought within one year after discovery of the untrue statements and omissions in the IPO Materials and within three years of the effective date of the IPO Materials.

64.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages from the defendants and each of them, jointly and severally.

### SECOND CLAIM
### Violation of Section 12(a)(2) of
### The Securities Act Against The Company and The Underwriter Defendants

65.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter, or the intent of the defendants to defraud Plaintiff or members of the Class.

66.     This count is brought pursuant to Section 12 of the Securities Act on behalf of the Class, against Ply Gem and the Underwriter Defendants.

67.     As set forth above, the IPO Materials contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to

state material facts required to be stated therein.

68.     Defendants were sellers, offerors, and/or solicitors of purchasers of the shares offered pursuant to the IPO Materials.

69.     Defendants owed to the purchasers of Ply Gem's common stock pursuant or traceable to the IPO the duty to make a reasonable investigation of the statements contained in the IPO Materials to ensure that such statements were accurate and that they did not contain any misstatement or omission of material fact, and, in the exercise of reasonable care, should have known that the IPO Materials contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

70.     This action is brought within three years from the time that the securities upon which this Count is brought were sold to the public, and within one year from the time when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based.

**THIRD CLAIM**
**Violation of Section 15 of The Securities Act**
**Against the Individual Defendants**

71.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the defendants to defraud Plaintiff or members of the Class.

72.     This count is brought pursuant to Section 15 of the Securities Act on behalf of the Class, against the Individual Defendants.

73.     The Individual Defendants, by virtue of their positions and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Ply Gem within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and

influence and exercised the same to cause Ply Gem to engage in the acts described herein.

74.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages and equitable relief in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated:  July 11, 2014                           Respectfully submitted,

                                                BRODSKY & SMITH, LLC


                                                By:_____
                                                Evan J. Smith, Esquire
                                                240 Mineola Boulevard
                                                Mineola, NY 11501
                                                Phone: 516-741-4799
                                                Fax: 516-741-0626
                                                Email: esmith@brodsky-smith.com

## PLAINTIFF'S CERTIFICATION

I, (Mr./Ms.) _John Stevens_ ("Plaintiff") declare under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's transactions in _PGEM_ of securities during the Class Period specified in the Complaint are as follows (use additional sheet if necessary):

| Date | # of Shares Purchased | # of Shares Sold | Price |
|------|----------------------|------------------|-------|
| 1-13-14 | 699 | 0 | 14.3284 = $10015.51 |

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws. [Or, Plaintiff has served as a class representative in the action(s) listed as follows:]

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _7_ day of _July_, 20_14_.

Sign Name: _John_
Print Name: _John Stevens_
Address:
State, Zip Code:
County:
Country (if not USA):